THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COASTAL VILLAGES POLLOCK, LLC<br><br>Petitioner,<br><br>v.<br><br>AHOKAYA NAUFAHU,<br><br>Respondent.<br><br>_____<br><br>AMERICAN SEAFOODS COMPANY LLC.,<br><br>Plaintiff,<br><br>v.<br><br>AHOKAYA NAUFAHU,<br><br>Defendant. | CASE NO.  C13-1234-JCC<br>             C13-1235-JCC<br><br>ORDER |

This matter comes before the Court on Defendant and Respondent Ahokaya Naufahu's motion for maintenance and cure (Case No. C13-1234, Dkt. No. 17; Case No. C13-1235, Dkt. No. 18), Petitioner Coastal Villages Pollock's motion for summary judgment (Case No. C13-1234, Dkt. No. 23), and Plaintiff American Seafoods' motion for leave to supplement the record (Case No. C13-1235, Dkt. No. 29). Having thoroughly considered the parties' briefing and the

relevant record, the Court finds oral argument unnecessary and rules on the motions as follows. Mr. Naufahu's motion for pre-trial maintenance and cure is DENIED, Plaintiff American Seafoods' unopposed motion to supplement the record is GRANTED, and Petitioner Coastal Villages' motion for summary judgment is GRANTED.

**I.    BACKGROUND**

Mr. Naufahu was first hired by American Seafoods in 1997. (Case No. C13-1235, Dkt. No. 19 at ¶ 2.) Mr. Naufahu worked for American Seafoods aboard the F/V Northern Hawk each season from 2002 until 2010, when the vessel was sold to Coastal Villages. *Id*. Mr. Naufahu continued working on the Northern Hawk under Coastal Villages' management from 2011 until November 2012. (Case No. C13-1234, Dkt. No. 1 at ¶¶ 2–3.) Mr. Naufahu has an extensive history of smoking tobacco and smoked between one and one-and-a-half packs of cigarettes a day for twenty years. (Case No. C13-1234, Dkt. No 26, Ex. 6 at 2.) Mr. Naufahu has a long history[1] of respiratory issues and was eventually diagnosed with pulmonary fibrosis[2] and emphysema in May 2009 after a coughing fit that caused him to pass out sent him to the emergency room. (Case No. C13-1235, Dkt. No. 26, Ex. 1 at 3.)

Mr. Naufahu was required to fill out a "Health and History Assessment" form as a condition of his employment when he returned to work for American Seafoods in January of 2010. (Case No. C13-1235, Dkt. No. 25 at ¶ 4.) Mr. Naufahu disclosed the single coughing episode that sent him to the ER, but checked "no" to the following items: fainting spells, emphysema, cough lasting more than two weeks, bloody sputum, breathing problems, smoking, and shortness of breath. (Case No. C13-1235, Dkt. No. 25, Ex. 1 at 2, 5.)

//

---

[1] Mr. Naufahu stated in his deposition that he began having severe coughing fits including occasionally coughing-up blood and shortness of breath in the early 2000s. (Case No.C13-1234, Dkt. No. 25, Ex. A at 6.)

[2] Pulmonary fibrosis is an untreatable, progressive condition. (Case No. C13-1235, Dkt. No. 26, Ex. 6 at ¶ 12.)

When Mr. Naufahu began work for Coastal Villages after the sale of the Northern Hawk, he was again required to fill out a "Health Questionnaire" in January 2011. (Case No. C13-1234, Dkt. No. 25, Ex. 1 at 40–42.) In these forms, Mr. Naufahu disclosed that he had had a cough lasting longer than two weeks, but checked "no" to fainting spells, emphysema, and bloody cough. He also failed to disclose his lung issues in the space indicated for "medical problems not noted above" and "any illnesses or injuries other than those already listed." (*Id.*) Mr. Naufahu's respiratory problems continued to worsen, and by August of 2011, he experienced shortness of breath going up a flight of stairs, and his cough was an issue daily. (Case No. C13-1235, Dkt. No. 26, Ex. 7 at 1.)

Mr. Naufahu filled out another copy of the Health Questionnaire before beginning the 2012 fishing season. Mr. Naufahu again failed to disclose any of his respiratory issues.[3] (Case No.C13-1234, Dkt. No. 25, Ex. 1 at 43–45.) In March of 2012, Mr. Naufahu experienced chest pain while working on board the Northern Hawk. (Case No.C13-1234, Dkt. No 1 at ¶ 12; Dkt. No. 16 at ¶ 3.) Mr. Naufahu was airlifted to a hospital where five stents were placed in his heart, and Coastal Villages paid all maintenance, cure, and unearned wages for this event. (*Id.*) This heart attack did not affect Mr. Naufahu's chronic pulmonary fibrosis and emphysema. (Case No. C13-1234, Dkt. No. 29, Ex. F at 14–15.)

Mr. Naufahu's employment with Coastal Villages ended on November 23, 2012. (Case No.C13-1234, Dkt. No 1 at ¶ 3; Dkt. No. 16 at ¶ 1.) On December 3, 2012, Mr. Naufahu went to the emergency room complaining of shortness of breath and cough. (Case No.C13-1235, Dkt. No. 26, Ex. 10 at 1.) Mr. Naufahu informed the emergency room staff that he had been coughing for "the last 3 weeks," had at times coughed up blood, and once again coughed so hard he passed out. (*Id.*) Mr. Naufahu was diagnosed with pneumonia and treated in the hospital until December 5, 2012. (Case No. C13-1234, Dkt. No. 25, Ex. 2 at 26–28.)

---

[3] Mr. Naufahu also checked "no" to "have you ever had" a "cough lasting two weeks." (Case No.C13-1234, Dkt. No. 25, Ex. 1 at 45.)

1    Mr. Naufahu's pulmonary condition has continued to worsen since leaving Coastal
2 Villages' employ and he now requires oxygen through most of the day. (Case No. C13-1235,
3 Dkt. No. 18, Ex. 2.) He is also undergoing evaluation for a potential lung transplant should his
4 condition deteriorate, though it is unclear when or if Mr. Naufahu would be a viable candidate
5 for such a procedure due to concerns about his weight and heart. (Case No. C13-1234, Dkt. No.
6 25, Ex. 2 at 22–23.)
7    Coastal Villages and American Seafoods filed separate cases in which each seeks a
8 declaratory judgment that they have no duty to provide maintenance and cure to Mr. Naufahu for
9 his pulmonary conditions or any other conditions for which he is now requesting payment. (Case
10 No. C13-1234, Dkt. No. 1 (Coastal Villages); Case No. C13-1235, Dkt. No. 1 (American
11 Seafoods).) The Court previously consolidated these matters for discovery purposes. Mr.
12 Naufahu has now filed a motion to expedite the trial in both cases and asks the Court to compel
13 American Seafoods to provide pre-trial maintenance and cure. (Case No. C13-1234, Dkt. No. 17;
14 Case No. C13-1235, Dkt. No. 18.) Coastal Villages moves for summary judgment on the ground
15 that Mr. Naufahu is not entitled to maintenance and cure, and that even if he is so entitled, his
16 willful concealment of his pulmonary conditions forfeits that right. (Case No. C13-1234, Dkt.
17 No. 23.) American Seafoods requests that the Court treat Mr. Naufahu's motion for pre-trial
18 maintenance and cure as a summary judgment motion and find that Mr. Naufahu has not met his
19 burden. (Case No. C13-1235, Dkt. No. 23.)

20 **II.    DISCUSSION**
21    A.    **Legal Standards and Governing Law**
22    Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant
23 summary judgment if the movant shows that there is no genuine dispute as to any material fact
24 and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making such
25 a determination, the Court must view the facts and inferences to be drawn therefrom in the light
26 most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–50

(1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

> B.  Mr. Naufahu's Motion for Pre-Trial Maintenance and Cure from American Seafoods

In his motion to compel pre-trial maintenance and cure, Mr. Naufahu (1) seeks an expedited trial or evidentiary hearing pursuant to Federal Rule of Civil Procedure 42(b) and (2) "begs the Court to also grant interim relief in equity by ordering American Seafoods [but not Coastal Villages] to pay maintenance and cure now, until the date of the expedited hearing or trial, without prejudice to its ultimate liability." (Case No. C13-1235, Dkt. No. 17 at 2.) He requests that American Seafoods pay him an amount of $40 per day, or roughly $1,200 per month until the Court can determine American Seafoods' liability on the merits. (*Id.*) American Seafoods asks this Court to construe Mr. Naufahu's motion to be a summary judgment motion because it is a request for a ruling that he is entitled to maintenance and cure. (Case No. C13-1235, Dkt. No. 23 at 2 n.1.)

This Court has addressed in prior cases the open-question as to what standard governs a pre-trial motion for maintenance and cure, holding that "in spite of the canon of admiralty law that all doubts and ambiguities should be resolved in favor of the seaman, the summary judgment standard should be applied to a pre-trial motion to compel maintenance and cure." *Bunebrazo v. Ocean Alaska*, No. C06-1347-JCC, 2007 WL 7724765 (W.D. Wash. Feb. 28, 2007). The reason,

as explained by other courts reaching the same conclusion, is that "other than a motion for summary judgment, [the Court] is aware of no procedure of obtaining pre-trial judgment on the merits of a claim." *Guerra v. Arctic Storm, Inc.*, No. C04-1010, 2004 U.S. Dist. LEXIS 24388 (W.D. Wash. Aug. 4, 2004). To disregard the only procedural mechanism for reaching such a judgment when disputed issues of fact exist would place "too heavy a thumb on the scale in favor of the seaman." *Bunebrazo*, 2007 WL 7724765, at *4.

Because Mr. Naufahu concedes that he cannot prevail under the summary judgment standard with the evidence currently available, the Court denies his motion for pre-trial maintenance and cure without further analysis under the Rule 56 standard. (Case No. C13-1235, Dkt. No. 17 at 3.) The Court further concludes that Mr. Naufahu's request for pre-trial maintenance and cure under an "equitable theory" likewise fails. In *Bunebrazo*, this Court granted pre-trial maintenance and cure as a matter of equitable discretion because the facts were clear that one of the seaman's two employers would be required to pay him some form of benefits. *Id*. at *5. There is no such inevitability here. On the facts presented, the Court finds that Mr. Naufahu's request for pre-trial maintenance and cure is unwarranted. Nonetheless, the Court will grant his request for an expedited trial so that he may obtain a dispositive ruling in a timely manner. The Court will also permit either party to file a motion for summary judgment if they wish to obtain a ruling through that procedural mechanism.

**C.     Coastal Villages' Motion for Summary Judgment**

Defendant Coastal Villages moves for summary judgment on its declaratory judgment claim that it does not owe Mr. Naufahu maintenance and cure. A shipowner's obligation to provide maintenance and cure has its roots in ancient maritime law. *Vaughan v. Atkinson*, 369 U.S. 527, 532 n.4 (1962). When a seaman is injured in service of his vessel, the ship owner has an obligation both to bring the seaman to a port for treatment and to pay maintenance (compensation for room and board equivalent to what the seaman would have received aboard the vessel) and cure (payments for medical treatment necessary to restore the seaman to health).

*Id.*; *see* MARTIN J. NORRIS, THE LAW OF SEAMEN §§ 26:5-26:6 (3d ed. 1985) (defining maintenance and cure). A seaman's entitlement to maintenance and cure continues until he reaches "maximum cure"—*i.e.*, a recovery as complete as the injury allows. *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298–99 (9th Cir. 1966). When considering a seaman's entitlement to maintenance and cure, the Court generally resolves any doubts in favor of the seaman. *Vaughan*, 369 U.S. at 532.

However, maintenance and cure is not always available to seamen who claim to be entitled to its benefit. Under the so-called "*McCorpen*" defense, when a seaman is asked to disclose pertinent information during a pre-hiring medical examination or interview and intentionally conceals or misrepresents material facts, he is not entitled to an award of maintenance and cure. *McCorpen v. Central Gulf S.S. Corp.,* 396 F.2d 547, 549 (5th Cir. 1968); *Burkert v. Weyerhaeuser S.S. Co.*, 350 F.2d 826, 829 n.4 (9th Cir. 1965); *see also Omar v. Sea-Land Serv., Inc.,* 813 F.2d 986, 990 (9th Cir. 1987) (ship owner must show that the seaman concealed a medical condition that "he kn[ew] or should [have] know[n] is related to the illness or injury for which maintenance and cure are requested.").

      1.    **Mr. Naufahu's Entitlement to Maintenance and Cure for his Pulmonary Conditions, Pneumonia, and his 2012 Heart Attack**

Mr. Naufahu appears to seek maintenance and cure for three separate medical conditions: his pulmonary conditions, the heart attack in March of 2012, and the pneumonia for which he was treated in December, 2012. (Case No. C13-1234, Dkt. No. 27.) For Mr. Naufahu to be entitled for maintenance and cure for these conditions, he must have been "in service of the ship" at the time the illness or injury "occurred, was aggravated, or manifested." *In re Marine Asbestos Cases*, 265 F.3d 861, 868 (9th Cir. 2001) (quoting *Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1357–58 (6th Cir. 1996)). "In the service of the ship" means that the sailor was "answerable to [the ship's] call to duty" when he or she fell ill or was injured. *Farrell v. United States*, 336 U.S. 511, 516 (1949).

Coastal Villages is not entitled to summary judgment on the ground that Mr. Naufahu is not entitled to maintenance and cure for his pulmonary conditions for two reasons. First, setting Coastal Village's invocation of the *McCorpen* defense aside for a moment, a genuine issue of fact exists as to whether Mr. Naufahu's pulmonary condition was aggravated during his service on the Northern Hawk while under Coastal Village's employ. The record is clear that Mr. Naufahu's respiratory symptoms continued to worsen during 2011, and his diagnosis was expanded to include additional respiratory illnesses. (Case No. C13-1235, Dkt. No. 26, Ex. 7 at 1, 3.) Although Coastal Village's expert, Dr. Cox, states that this deterioration reflected the progressive nature of Mr. Naufahu's lung diseases (Case No. C13-1234, Dkt. No. 25, Ex. 2 at ¶12), Dr. Ryan, one of the pulmonary specialists currently treating Mr. Naufahu, stated in his deposition that some patients with pulmonary fibrosis remain stable. (Case No. C13-1234, Dkt. No. 29, Ex. F at 13.) Second, a genuine issue of material fact exists as to whether Mr. Naufahu has reached maximum medical improvement for his pulmonary conditions. Sufficient facts exist that a reasonable jury could find that Mr. Naufahu has reached maximum medical improvement for any potential aggravations to his pulmonary symptoms because his condition is an incurable, progressive disease. (Case No. C13-1234, Dkt. No. 25, Ex. 2 at ¶ 12.) Conversely, a reasonable jury could also find that a lung transplant is necessary to bring Mr. Naufahu to maximum medical improvement for his pulmonary conditions. (Case No. C13-1234, Dkt. No. 25, Ex. D at 2.)

Summary judgment is appropriate, however, for Mr. Naufahu's pneumonia-based maintenance and cure claim. Although neither party provided any facts as to when Mr. Naufahu's pneumonia arose, no genuine issue of material fact exists as to whether he has reached maximum medical improvement for this condition. (*See* Case No. C13-1234, Dkt. No 25, Ex. C at ¶ 12 (Mr. Naufahu's pneumonia was resolved by March 1, 2013 at the latest.)) Summary judgment is likewise appropriate for Mr. Naufahu's 2012 heart attack-based claim. Both parties concede that this condition arose while Mr. Naufahu was working aboard the Northern Hawk,

and that all maintenance and cure has been paid for this event. (Case No. C13-1234, Dkt. No 1 at ¶12; Dkt. No. 16 at ¶ 3.)

### 2. Mr. Naufahu's Failure to Disclose His Pulmonary Condition

Coastal Villages also moves for summary judgment on the ground that Mr. Naufahu willfully failed to disclose his pulmonary conditions. Coastal Villages argues that this failure to disclose his pulmonary condition removes any obligation it may have to pay maintenance and cure for those conditions even if they manifested while Mr. Naufahu was in service of the vessel. (Case No. C13-1234, Dkt. No. 23 at 15–18.) As explained above, a seaman is not entitled to maintenance and cure if: (1) he intentionally withholds from his employer information about a preexisting medical condition; (2) there is a causal relationship between the undisclosed condition and the impairment for which he seeks compensation; and (3) the undisclosed condition was material to the employer's decision to hire him. *Vitcovich v. Ocean Rover O.N.*, 106 F.3d 411 (9th Cir. 1997) (unpublished); *Quiming v. Int'l. Pac. Enter., Ltd.,* 773 F.Supp. 230, 236 (D. Haw. 1990); *see*, *e.g.*, *Tawada v. United States,* 162 F.2d 615, 617 (9th Cir. 1947) (barring maintenance and cure for seaman who claimed to be fit when hired but concealed that he had tuberculosis); *Figuerias v. F/V Pacific Fury*, No. C95-0468-JCC, 1996 WL 875553, at *3 (W.D. Wash. Feb. 5, 1996) (barring maintenance and cure for seaman who failed to disclose pre-existing injuries on pre-hiring questionnaire).

Neither Coastal Villages nor Mr. Naufahu dispute the first and second elements, and the record is clear that Coastal Villages has satisfied its burden for both of those elements. First, Mr. Naufahu failed to disclose any of the respiratory symptoms or diagnoses known to him since 2009 on either of the pre-employment questionnaires he filled out for Coastal Villages in 2011 and 2012. (Case No. C13-1234, Dkt. No. 25, Ex. 1 at 40–45.) Indeed, Mr. Naufahu himself admitted that much of the information he provided on the forms regarding his respiratory issues was incorrect. (Case No. C13-1234, Dkt. No. 25, Ex. 1 at 10–11.) Second, Mr. Naufahu's current symptoms and diagnoses are identical to those he concealed from Coastal Villages. (*Compare*

Case No. C13-1234, Dkt. No. 26, Ex. 1 *with* Dkt. No. 21.)

Mr. Naufahu argues only that the third element, materiality, is not met because there is no evidence that Coastal Villages would not have hired him had it known about his pulmonary conditions. (Case No. C13-1234, Dkt. No. 27 at 2–3.) Coastal Villages cites to *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 (5th Cir. 2005) and argues that conclusive evidence that it would not have hired Mr. Naufahu due to these conditions is not required. (Case No. C13-1234, Dkt. No. 28 at 10–12.) The Court agrees with Coastal Villages that *Brown* is a persuasive case in this situation. In *Brown*, the Fifth Circuit vacated a jury award for maintenance and cure to a seaman who had failed to disclose a pre-existing back condition on pre-employment medical questionnaires for two difference maritime employers. 410 F.3d. at 177. When analyzing the materiality prong, the court stated that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Id.* This analysis is in line with how other district courts within the Ninth Circuit approach the issue. *See Quiming v. In'l Pac. Enterprises Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990) (holding that a pre-employment questionnaire that asked specific medical questions was necessarily material). *Cf. Rose v. Miss Pac., LLC*, No. 3:09-CV-00306-ST, 2012 WL 75028 (D. Or. Jan. 10, 2012) (finding genuine issue of material fact because questionnaire did not ask "questions specifically designed to elicit information" about prior injuries).

The medical questionnaires in this case were three pages long and asked a series of questions about specific medical conditions and symptoms including fainting spells, emphysema, and bloody coughs. The forms also had two catch-all questions: "medical problems not noted above" and "any illnesses or injuries other than those already listed." (Case No. C13-1234, Dkt. No. 25, Ex. 1 at 40–45.) These questions were asked of Mr. Naufahu before each season began and were clearly designed to elicit specific information about his health. Moreover, these questions were reasonably related to Mr. Naufahu's position on the Northern Hawk. His position

involved twelve-hour shifts with a significant amount of walking, repeated trips up and down stairs and ladders, heavy lifting, and the handling of seafood. (Case No. C13-1235, Dkt. No. 26, Ex. 2 at 11–13.) In light of these facts, the Court agrees that Mr. Naufahu's willful concealment of his pulmonary conditions removes any right he may have had to maintenance and cure benefits for these conditions from Coastal Villages.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant's motion for maintenance and cure is GRANTED IN PART and DENIED IN PART. (Case No. C13-1235, Dkt. No. 18.) American Seafoods has no obligation to pay pre-trial maintenance and cure, but the trial date of July 21, 2014 and associated deadlines are hereby VACATED in Case No. C13-1235. Trial is hereby rescheduled to May 21, 2014 at 9:30 A.M. in Courtroom 16206. The parties' proposed pretrial order is due May 9, 2014 and trial briefs shall be submitted no later than May 16, 2014. The mediation deadline of March 31, 2014 and discovery deadline remain unchanged. The parties may file summary judgment motions if they wish no later than April 7, 2014.

2. Plaintiff American Seafoods' unopposed motion to supplement the record is GRANTED. (Case No. C13-1235, Dkt. No. 29.)

3. Petitioner Coastal Villages' motion for summary judgment is GRANTED. (Case No. C13-1234, Dkt. No. 23.)

4. Respondent's motion for maintenance and cure (Case No. C13-1234, Dkt. No. 17) is DENIED as moot.

//
//
//
//
//

1 DATED this 19th day of March.

John C. Coughenour
UNITED STATES DISTRICT JUDGE